UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Ralph Sweitzer,  Case No. 05-47339
 Chapter 7
 Debtor. Hon. Marci B. McIvor
_____/

Bank of Ann Arbor,

 Plaintiff

v.  Adv. P. No. 05-5420

Ralph Sweitzer,

 Defendant.
_____/

## OPINION

On July 11, 2005, Plaintiff filed a Complaint against defendant/debtor Ralph Sweitzer requesting that the Court find Defendant's debt to Plaintiff non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and/or denying Debtor a discharge under 11 U.S.C. § 727(a)(3) and (a)(4). Prior to trial, the Court allowed Plaintiff to amend his § 523 (a)(2)(A) claim and state a claim under § 523(a)(2)(B). A trial was held on October 11, 2006. Based on the pleadings and the evidence offered at trial, the Court makes the following finding of facts and conclusions of law.

## Findings of Fact

1. On February 18, 2003, Defendant and Thomas LaCosse entered into an "Agreement to Transfer Real Property and Membership Interest in Arbor Development Properties, LLC and Option to Purchase a Membership Interest in Dover Construction." The Agreement provided:

1. **Arbor**, will purchase all of the interest of LTD Investments, Inc., in real property located at 2084-2120 Depot Street, Holt, Michigan, according to the terms of a certain Real Estate Purchase Agreement entered into on October 18, 2002, with this agreement for Nine Hundred Thousand Dollars ($900,000) and complete said purchase as soon as practicable, agreeing that time is of the essence.

2. At the closing of the sale of real property mentioned in paragraph one (1) above, **Arbor** will transfer membership units in **Arbor**, reflecting a fifteen (15%) percent membership interest to **Sweitzer** and Eight-five (85%) percent membership interest to **LaCosse**. It is the parties intent that all debt obligations, primarily the underlying mortgage obtained by **Sweitzer**, insurance and real estate, personal property taxes and administrative obligations will be paid on a monthly basis from the first rent receipts generated by the property and all the remaining funds, if any, shall be placed in an escrow-management account which will be used to offset future obligations of the property and for no other purpose without the express written authorization and signature of both **Sweitzer** and **LaCosse**.

   . . .

5. That **LaCosse** has an option to purchase 50% of the outstanding membership units in **Dover** for a period of 2 years for $1.00.

   . . .

9. This agreement is contingent upon:

   A. The performance of the Purchase Agreement between **Arbor Development Properties, LLC** and **LTD Investments, Inc.** entered into on October 18, 2002,

   B. The transfer of the membership units of 85% of Arbor Development Properties, LLC to Thomas LaCosse and 15% to Ralph Sweitzer,

   C. The transfer of the membership units by exercise of Thomas LaCosse's option of 50%

      of Dover Construction, LLC,

  D. The execution of the promissory Note between
    LaCosse and Dover Construction LLC in the
    amount to be determined by CPA Eric Sloane
    and the parties,

  E. The execution of the Promissory Note between
    Ralph Sweitzer and Elm Investments LLC in
    the amount of $125,000 and the execution of
    the Promissory Note between Thomas
    LaCosse and Elm Investments LLC to be
    determined by their CPA Eric Sloane, which
    said amounts shall include the amounts of
    money owed to Ron Wilmus.

  2. On February 18, 2003, LTD Investments sold the real property located at 2100 Depot Street, Holt, MI to Arbor Development. The purchase price of the property was paid by Defendant with funds borrowed from the Ann Arbor Commerce Bank.

  3. On May 2, 2003, Defendant formed Dover Construction, LLC. Dover is in the business of underground construction.

  4. Arbor Development's only asset was real property located at 2100 Depot Street, Holt, MI. The assets of Dover Equipment consisted of machinery and equipment to be used in the business of underground construction.

  5. On May 7, 2003, Defendant personally borrowed $48,000 from the Bank of Ann Arbor. On June 23, 2003, Dover (through Defendant) obtained a $50,000 loan from Plaintiff Bank of Ann Arbor. The Dover note was secured by a piece of equipment, a Komatsu loader, and was personally guaranteed by Defendant.

  6. During the loan application process, Defendant submitted to the Bank financial information about himself and Dover. That information included a personal Statement of Financial Condition dated February 11, 2003, a Dover Construction

balance sheet dated June 30, 2003, and the "Operating Agreement of Dover Construction LLC" dated January 1, 2003. The operating agreement indicates that Defendant is the sole voting member of the company. Defendant's personal statement of assets included the following assets:

| | | |
|---|---:|---:|
| Cash in banks, etc. | | $ 27,590 |
| Investments | | |
| U.S. Treasuries | 28,302 | |
| Retirement Accounts | 217,588 | |
| | | 245,890 |
| Real Estate | | |
| Personal Residence | 648,000 | |
| Private Lot | 110,000 | |
| | | 758,000 |
| Other Assets | | |
| Automobiles | 87,100 | |
| Collectibles & Art (appraised) | 68,500 | |
| Silver- appraised | 112,870 | |
| Personal Property | 100,000 | |
| Net Equity- Kinser Ppties LLC | 658,152 | |
| Net Equity Delux Office Ppties LLC | 247,912 | |
| Net Equity Arbor Development LLC | 360,000 | |
| Loans Receivable | 147,228 | |
| Family Trust-estimated value | 400,000 | |
| Stock in closely held company | 450,000 | |
| | | 2,631,762 |
| Total Assets | | 3,663,242 |

7. On October 22, 2003, Defendant, Thomas LaCosse, Arbor Development, Dover Construction and another entity in which Defendant was invested, Elm Investments, signed several agreements. The agreement involving Dover Construction states:

WHEREAS, LaCosse and Sweitzer each own a 50% interest in Dover,

4

> LaCosse shall transfer to Sweitzer equipment reflecting a current fair market value of $1,083,000 dollars which will be reflected on the books and records of Dover in that amount. To this date LaCosse has transferred equipment to Dover in the approximate value of $500,000. Sweitzer shall execute a promissory note to LaCosse for the value of the equipment contributed to Dover Construction LLC, in the amount of $250,000 which shall be guaranteed by Dover and payable as follows. . .

The operating agreement regarding Arbor Development states:

> WHEREAS, the parties have acquired certain interests in Arbor, with Thomas LaCosse owning 85% and Ralph Sweitzer owning 15% respectively. . .

8. Towards the end of 2003, Defendant's financial situation deteriorated. Defendant had anticipated a stream of income from the property owned by Arbor Development in Holt, Michigan. The stream of income was to be used to pay off a loan to Ann Arbor Commerce Bank, and to fund development projects. The stream of income failed to materialize, and over the next year, banks foreclosed upon the assets of both Arbor and Defendant.

9. During this time period, Defendant and Dover defaulted on the notes to Plaintiff. Plaintiff sued in state court, and on December 8, 2004, judgments for $63,967.78 and $47,224.94 were entered against Defendant and Dover in favor of Plaintiff.

10. Defendant filed a voluntary chapter 7 bankruptcy petition on March 10, 2005. On his original Schedule B, Defendant included a $950,000 interest in Arbor Development Properties, LLC, and a $680,000 interest in Dover Construction, LLC.

11. On April 1, 2005 Schedule B was amended to add a 21.25% interest in Elm Investments and reaffirm the Arbor and Dover values.

12. At his creditors' exam, Defendant testified that he owned 100% of Arbor and

5

Dover.

13. On February 22, 2006, Debtor filed an amended Schedule B which lists Debtor's interest in Arbor Development at 15% (with a value of $950,000) and his interest in Dover Construction at 50% (with a value of $680,000).

14. On July 11, 2005, Plaintiff filed the present adversary proceeding against Defendant seeking denial of discharge or, alternatively, a finding of non-dischargeability. The Complaint includes the following five counts:

> Count I: pursuant to 11 U.S.C. § 523(a)(2)(A), Defendant obtained the June 23, 2003 loan by falsely representing to the bank that the collateral was a 1997 wheel loader, and not (as it turned out) a 1987 wheel loader.
>
> Count II: pursuant to § 523(a)(2)(A), Defendant obtained the proceeds of the June 23, 2003 loan by misrepresenting himself as owning 100% of Dover, when in fact, he owned only 50% of Dover.
>
> Count III: pursuant to § 727(a)(4), Defendant knowingly misrepresented his ownership interest in Dover on his bankruptcy petition (again claiming a 100% interest when he had only a 50% interest).
>
> Count IV: pursuant to § 727(a)(4), Defendant falsely represented under oath that he owned 100% of Arbor Development Properties, LLC when he owned only 15% of that entity.
>
> Count V: pursuant to § 727(a)(3), Defendant concealed or failed to preserve records from which his financial condition or business transactions could be ascertained.

As stated above, the Court permitted Plaintiff to amend Counts I and II and allege claims under 11 U.S.C. § 523(a)(2)(B).

15. Arbor Development has no assets, as its only asset was foreclosed upon years ago.

16. The Chapter 7 Trustee did not file a non-dischargeability action against the Defendant/Debtor.

6

## Jurisdiction

Bankruptcy courts have jurisdiction over all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11.  *See* 28 U.S.C. §§ 1334 and 157.  Core proceedings include proceedings to determine dischargeability.  11 U.S.C. § 157(b)(2)(I).

## Law

### 11 U.S.C. § 523(a)(2)(B): Fraud

Section 523(a)(2)(B) excepts from discharge debts incurred by use of a false statement in writing.   To prevail on a § 523(a)(2)(B) claim, a plaintiff must establish the following elements regarding the writing:

> (i) that it is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive.

*See Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985). A document that is "written, signed, adopted or used by the debtor" qualifies as a statement in writing under this section.  *Insouth Bank v. Michael (In re Michael)*, 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001).

Under the first element, a written statement is materially false if the information in it "offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit."  *Id., citing In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985).

The second element requires that the statement refer to the debtor's financial condition.

7

The third element requires the plaintiff/creditor to establish reasonable reliance on the written statement. Reasonable reliance is not defined in the Bankruptcy Code. Case law generally holds that it is determined objectively based on the totality of the circumstances. *In re Michael,* 265 B.R. at 598.

> The determination of the reasonableness of the creditor's reliance on a false statement in writing is judged by utilizing such factors as:
> whether there had been previous business dealings between the debtor and the creditor;
> whether there were any warnings that would alert a reasonably prudent person to the debtor's misrepresentations;
> whether a minimal investigation would have uncovered the inaccuracies in the debtor's financial statements; and
> the creditor's standard practices in evaluating creditworthiness and the standards or customs of the creditor's industry in evaluating creditworthiness.

*Id.*

The fourth element requires that the debtor make or publish the statement with "intent to deceive."

> The standard. . . is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied. . . . That is, the debtor must have been under some duty to provide the creditor with his financial statement; but full discharge may be disallowed if the debtor either intended the statement to be false, or the statement was grossly reckless as to its truth.

*Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985)(citations omitted).

The Court finds that Plaintiff has failed to establish any of the elements of a § 523(a)(2)(B) claim. Plaintiff's argument that Defendant's debt is non-dischargeable is premised on an interpretation of the facts which is completely unsupported by the evidence.

As to the first element required to prove a § 523(a)(2)(B) claim, Plaintiff has

8

alleged that Defendant presented materially false financial information when Defendant, acting on behalf of Dover Construction, applied for a loan from Plaintiff. Plaintiff asserts that Defendant made two material misrepresentations. The first was in his statement of financial condition, wherein Defendant allegedly overstated his equity in Arbor Development at $360,000. Plaintiff argued at trial that the document (specifically the agreement between Defendant and Thomas LaCosse dated February 18, 2003) gave Defendant only 15% interest in Arbor Development. Plaintiff argued that $360,000 in equity represented all the equity in Arbor Development, not Defendant's 15% share. The second alleged misrepresentation relates to the documents supplied by Dover Construction. Plaintiff argues that those documents indicate that Defendant owned 100% of Dover Construction when, in fact, he owned only 50% of Dover. The Court rejects Plaintiff's arguments as unsupported by the evidence.

The agreement signed by Defendant and Thomas LaCosse on February 18, 2003 stated that upon the purchase of property from LTD, Thomas LaCosse would have an 85% share in Arbor and Defendant would have a 15% share. The document also provided that Thomas Lacosse had an option to purchase up to a 50% interest in Dover. However, the agreement also had contingencies, one of which required Thomas LaCosse to execute a promissory note to Defendant. Defendant testified at trial that the intention of the parties in February 2003 was that LaCosse was to obtain sufficient funds to "refinance the business" with Defendant so that Defendant could pay off Ann Arbor Commerce Bank. Defendant further testified that this contingency was never satisfied and LaCosse never executed a promissory note or paid any money to Defendant. Defendant's testimony was not completely consistent, but there was one

9

fact on which he was clear: at the time Dover applied for the loan from Plaintiff, to the extent there was equity in Arbor Development, it belonged to Defendant. Defendant also testified that LaCosse never exercised his option to become a 50% owner of Dover.

The Court finds Defendant's testimony regarding his ownership interest in Dover and Arbor as of May and June 2003 to be credible. On those dates, Defendant believed he was the 100% owner of Arbor and Dover based on Thomas Lacosse's failure to perform the contingencies in the February 2003 agreement. The Court finds Defendant presented no materially false information when he applied for the loans.

The second element of a § 523(a)(2)(B) action simply states that the information must relate to Debtor's financial condition. There is no dispute as to this element.

The third element of § 523(a)(2)(B) requires that Plaintiff establish reasonable reliance on the written material. Plaintiff failed to produce a witness who had actual knowledge of how Defendant's loans were approved, so there is no evidence as to which (if any) written documents were relied upon by the Bank in approving the loans. Since the $50,000 loan to Dover was secured with collateral, it is possible that Plaintiff did not rely on the written material supplied by Defendant. Plaintiff did produce a witness, Lawrence Grace, a vice-president of Plaintiff bank, who testified that if the Bank becomes aware of a single misrepresentation on a financial statement, it triggers concern regarding the borrower's valuation of other assets. But that testimony cannot support Plaintiff's argument that it relied on the written materials supplied by Defendant in approving the loans. Furthermore, Debtor's Statement of Financial Condition listed many assets and disclosed a total net worth (in February, 2003) of $3,064,526. Plaintiff

10

raised no issues regarding the value of any asset other than the valuation of the interest in Arbor Development. That asset represented approximately 1/12 of Defendant's net worth as set forth on the statement. The Court is not persuaded by Plaintiff's argument that had Debtor accurately valued that single asset, the loan would have been denied. Plaintiff has failed to introduce evidence to support its claim that Plaintiff relied on the written statements provided by the Debtor in deciding to grant the Defendant's loan application.

The fourth element required in a § 523(a)(2)(B) action is that Plaintiff must prove that Defendant acted with an intent to deceive at the time he obtained the loans. Plaintiff introduced no evidence which supports an argument that the written documents submitted by Plaintiff to the Bank were submitted with an intent to deceive the Bank regarding Debtor's financial condition. Defendant testified that in May and June 2003 he was solvent and had reason to believe that the values he placed on his assets were realistic. Furthermore, the Defendant's statement of financial condition is dated February 11, 2003, several months prior to the date on which Defendant applied for the loans from Plaintiff. The Court infers from the date that the financial information was not prepared specifically for the purpose of inducing Plaintiff to approve the loans.

The Court finds no evidence in either the documents or the testimony of the witnesses that the Defendant intended to defraud Plaintiff. Defendant's testimony that when he borrowed the money in May 2003 he had operating businesses and investments and an ability to pay his debts, was credible. Subsequent events proved Defendant wrong, but an inability to pay a debt is not grounds for denial of discharge. Plaintiff has failed to meet its burden of proof with regard to any of the elements of a §

11

523(a)(2)(B) action, and Plaintiff's Complaint is dismissed as to Counts I and II of the Complaint.

**Denial of Discharge under § 727(a)(3) and (a)(4)**

Plaintiff also seeks to deny Defendant a discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(4). In Count III, Plaintiff contends that Defendant should be denied discharge under 11 U.S.C. § 727(a)(3) because he failed to produce documents requested by Plaintiff. In Count IV, Plaintiff contends that Defendant should be denied a discharge because he misrepresented his ownership interest in Dover and Arbor on his bankruptcy schedules.

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless one or more of eight exceptions is met. Although exceptions to discharge are strictly construed (*See Rembert v. AT&T Universal Card Services, Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997).

Section 727(a)(3) provides that the court shall grant the debtor a discharge unless:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). A condition precedent to discharge is that the debtor must provide to his creditors enough information to ascertain the debtor's financial condition and to track his finances with substantial accuracy for a reasonable period in the past to

12

the present.  *In re Wazeter*, 209 B.R. 222, 227 (W.D. Mich. 1997) (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)).  Creditors and courts are not required to speculate regarding the financial condition and history of the debtor or to reconstruct the debtor's financial affairs.  *Wazeter* at 227.  Intent is not an element of a 727(a)(3) exception to discharge.  *Id.*

> A debtor is not required to keep books or records in any particular form, nor do the creditors have to establish an intent to conceal the financial condition, as long as complete disclosure is made so that the creditors are not required to guess as what actually occurred.

*In re Delancey*, 58 B.R. 762, 768 (S.D.N.Y. 1986).

The party seeking the denial of a discharge has the burden of proving the inadequacy of the debtor's records.  To determine whether the debtor's records are adequate, courts examine whether the records are the type kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience.  *Wazeter*, 209 B.R. at 227.  "Where debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping."  *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002) (citation omitted).

Once the moving party shows that there is not sufficient written evidence to ascertain the debtor's financial condition and history, then the burden shifts to the debtor to show that his failure to keep adequate records was justified in the circumstances.  *Wazeter*, 209 B.R. at 227.  To determine whether the inadequacy of the debtor's records was justifiable, courts look at a variety of factors, including the debtor's education, sophistication, business experience, size, and complexity of the

debtor's business, debtor's personal financial structure, and any special circumstances. *Wazeter*, 209 B.R. at 230. *See In re Dolin*, 799 F.2d 251 (6th Cir. 1986) (debtor's drug and gambling addictions did not justify his difficulty in recording his business transactions).

Courts will deny a discharge under section 727(a)(3) when there is evidence of debtor misbehavior. For example, in *In re Delancey*, 58 B.R. 762 (S.D.N.Y. 1986), the debtor failed to produce records showing what he did with the proceeds from the sale of jewelry valued at over $269,000 and art valued at over $200,000. Debtor's failure to produce such records was not excused by his testimony that he simply did not maintain such records. *Id.* at 768. "The production of records to explain the disposition of substantial assets is a prerequisite to a debtor's relief from having to repay his creditors." *Id.* at 769.

Plaintiff argues that Defendant has failed to produce additional documents signed by both Defendant and Thomas LaCosse which might clarify the relationship between the parties. Plaintiff also argued that Defendant failed to produce information regarding assets of Dover Construction, assets which could be pursued by Plaintiff in satisfaction of its judgment.

Defendant testified that it has provided Plaintiff and the Chapter 7 Trustee with every document Defendant has pertaining to Arbor and Dover. Defendant testified that the offices for Dover and Arbor were located on the property in Holt, Michigan, and that Defendant spent very little time at those offices during 2004. His testimony that he has no knowledge as to what might have happened to documents in those offices was credible.

In any case, this Court finds that the only document from which Plaintiff might benefit, i.e. a document showing what happened to the collateral of Dover Construction, either does not exist or has not been in Defendant's possession since the Holt Property was foreclosed upon in 2004. There are no grounds for denying Debtor a discharge under 11 U.S.C. § 727(c)(3).

Section 727(a)(4) bars a debtor's discharge if he knowingly and fraudulently makes a false oath or account in connection with the case. "A false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." 6 *Collier on Bankruptcy* ¶ 727.04[1][c] at 727.42. In order to prevail under § 727(a)(4)(A), a creditor must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *In re Zwirn*, 2005 WL 1978510 (Bankr. S.D. Fla 2005)(citations omitted).

The purpose of § 727(a)(4) (A) is to "ensure 'that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.'" *In re Bratcher,* 289 B.R. 205, 218 (Bankr. M.D. Fl. 2003)( quoting *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987)). Section 727(a)(4)(A) ensures that adequate information is available to the case trustee and creditors without the need for examination or investigation to determine whether the information is true. *In re Craig,* 252 B.R. 822, 828-29 (Bankr. S.D. Fl. 2000). Debtors have a "paramount duty to

15

consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects." *Craig,* 252 B.R. at 829 (internal quotation omitted). "Policy considerations mandate that the requirement to list all assets and liabilities is an absolute obligation of those seeking discharge of their debts." *In re Whitehead,* 278 B.R. 589, 594 (Bankr. M.D. Fl. 2002). "[A] debtor who fails to make a full and complete disclosure of relevant information places the right to the discharge in serious jeopardy." *Id.*

> The requisite intent. . . may be discovered by inference from the facts. 'A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge.' However a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent.

6 *Collier on Bankruptcy* ¶ 727.04[1][a] at 727-40-41.

Plaintiff argues that Defendant's amendment of Schedule B, which altered his ownership interest in Arbor Development and Dover Construction, is grounds for denial of discharge. The Court disagrees. The Court is not convinced that Defendant knows the actual extent of his ownership interest in Arbor and Dover. While the agreements Debtor signed in October 2003 state that Defendant had a 15% interest in Dover and Thomas LaCosse had an 85% interest, Defendant testified at trial that Thomas LaCosse never fulfilled the precondition to such a split of ownership. The precondition was that LaCosse refinance or generate a stream of income to pay Defendant, thus allowing Defendant to pay off the loans to Ann Arbor Commerce Bank. At trial, Defendant testified he still believes that he has a 100% ownership interest in the businesses. Since both the written agreement and the testimony are full of inconsistencies and

16

unsatisfied contingencies, the Court cannot find that the statements Defendant made in his original Schedule B are false, nor can the Court find that Defendant had any intent to deceive the Trustee or creditors.

The Bank alleges that prior to bankruptcy Defendant attempted to hide assets from the Plaintiff, and that Debtor's pre-bankruptcy pattern of conduct continues in the bankruptcy. The Court has no control over a debtor's conduct prior to bankruptcy. The Court's concern is with the integrity of the bankruptcy process. The Court is convinced that Debtor has complied with all the requirements of the bankruptcy code; he has disclosed all his assets to the Trustee, and it is now the duty of the Trustee to pursue collection of those assets, if they have any value, for the benefit of creditors.

The Court notes that Arbor Development has no value, so it is of no benefit to the estate regardless of the size of Defendant's interest. If the Trustee determines Dover Construction has any assets, the Trustee will pursue collection of those assets and require any other party asserting an interest to prove that interest as a matter of law. The Court finds that even if Defendant 's original Schedule B and 341 testimony were inaccurate, those statements do not relate materially to the bankruptcy case.

Plaintiff has failed to establish any of the elements of a cause of action under § 727(a)(4), and the remaining Counts of Plaintiff's Complaint are dismissed.

## Conclusion

For the foregoing reasons, Plaintiff's Complaint is dismissed in its entirety.

**Signed on October 31, 2006**

                            **/s/ Marci B. McIvor**
                      **Marci B. McIvor**
                      **United States Bankruptcy Judge**